**UNITED STATES DISTRICT COURT**
**IN THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| Alonzo Voelker, Petitioner | " | |
| | " | CA No. 05-413T |
| v. | " | CR No. 00-18T |
| UNITED STATES OF AMERICA | " | |

**PETITIONER'S TRAVERSE AND RESPONSE TO THE GOVERNMENT'S RESPONSE TO WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

COMES NOW, Alonzo Voelker, hereinafter "petitioner", appearing specially in propria persona, and moves this Honorable Court with this Traverse and Response to the Government's Response to Writ of Habeas Corpus pursuant to 28 USC § 2241.

Relevently, since the inception of these proceedings petitioner has appeared specially in propria persona. As the Sixth Amendment right to legal counsel does not apply to habeas corpus proceedings, or post conviction remedy appeals. See PA. v. Finly, 481 US 551, 555-56 (1987). Therefore, petitioner respectfully requests that this Honorable Court construe this humble "Response" in a liberal manner as is articulated in the Supreme Court decision of Haines v. Kerner, 404 US 519 (1972).

## I. INTRODUCTION

Succinctly, since the Court's familiar with petitioner's proceedings of conviction. The petitioner will limit this introduction to the relevent facts that have induced the Government's Response ("Govt's Response") that the petitioner now files the instant Traverse and Response ("Traverse & Response").

On October 4, 1999, petitioner was sentenced to 4 years imprisonment by the state of Connecticut. While serving that sentence petitioner was indicted by the Rhode Island federal authorities. In March of 2000, petitioner was transfered to federal holding (Wyatt Detention Facility) by way of Habeas Corpus Ad Prosequendum. Subsequently, on August 15, 2000, petitioner was sentenced to 188 months by the United States District Court of Rhode Island. Through out the pendency of these proceedings petitioner inquired and was informed by his attorney (Carmine Giuliano, Esq.) that "the feds trump state jurisdiction so ofcourse these sentence's will be running concurrently."

In November of 2000, petitioner was transfered back to the state of Connecticut. On October 22, 2002, petitioner was paroled by the state of Connecticut to his federal detainer. Some time after petitioner was received into federal custody unbeknowest to him his sentence's were running consecutively.

After numerous unsuccessful inquiries within the Bureau of Prisons ("BOP") petitioner initiated corraspondance with the Honorable Ernest Torres. In an effort to help Judge Torres forwarded a copy of the Judgment & Commitment of petitioner's case. Then, on January 6, 2003, sent a letter suggesting that petitioner exhaust his administrative remedies within the "BOP." (See attached letter from Hon. E. Torres (January 6, 2003)).

Additionally, in taking heed to Judge Torres advice petitioner further initiated dual corraspondance's with his former attorney and Judge Torres which became a significant part of the claim herein.

After exhausting the "BOP's" administrative remedies petioner appropriately filed a writ of habeas corpus pursuant to 28 USC § 2241 on November 20, 2003. This moving document being filed in the Northern District of New York where petitioner is presently incarcerated.

On January 15, 2004, the Gov't (Charles E. Roberts, AUSA, NDNY) responded to petitioner's petition. Subsequently, on May 9, 2005, Magistrate Judge David R. Homer, NDNY, issued a Report-Recommendation and Order, in which recommended that the Court deny the petition in its entirety. Since, according to the Court's records, neither party filed any objections to Report-Recommendation and Order within the required 10 day period, the Court, by decision and Order, dated June 2, 2005, affirmed the same in its entirety and denied the petition.

In response to that Decision and Order, petitioner filed a Motion for Reconsideration, in which he alleged that, although the Court stated that he had not filed any objections to the May 9, 2005, Report-Recommendation and Order, he had, in fact filed a timely objection. Based upon petitioner's submission and Certificate of Service, the Court agreed to hear his motion for reconsideration of its June 2, 2005 Order.

Based on clear and concise arguments, the Chief Judge Fredrick J. Scullin, Jr., NDNY, on September 20, 2005, vacated the Court's June 2, 2005 Order of denial. After concluding that petitioner's objections "may have some merit." (¶ 11). Chief Judge Scullin, NDNY, transfered this importain matter to this United States District Court of Rhode Island ("USDC") pursuant to 28 USC § 1631.

After this matter being transfered to this Honorable Court ("USDCRI"), and the Court granting the Gov't three 30 day continuances. On January 17, 2006, petitioner received the "Govt's Response" which the Certificate of Service was dated on December 28, 2005, and sent to Schuylkill FCC.

In adhearance to the 10 day rule in filing any objections. The petitioner filed a Motion to Extend the Time to File a Traverse & Response to The Govt's Response on January 17, 2006. The requested time was January 27, 2006, based on 10 days after the petitioner received the "Govt's Response."

## II. RESPONSE TO THE GOVERNMENT'S ARGUMENT

Since the instant matter is successfully before this Honorable Court and the Government ("Gov't") acquiences that the Court should consider the issue of concurrency. Resulting in this rare "Traverse & Response" in refutation of the Govt's argument portion of it's "Response." In all due respect of the Gov't (Gerard B. Sullivan, AUSA) and understanding him consistantly upholding his job description ("prosecution"). Even though the Gov't agrees that the Court should resolve the issue presently before it. The Gov't attempts to influence the Courts decision in playing a decisive role in advocating against a concurrent sentence with numerous inaccurate legal views. Which has induced the current response in rebutall of the Govt's aggregated analogies intended to have an illusive effect on the outcome of the proceedings.

### (a) THE PETIONER'S ARGUMENTS TO THE BUREAU OF PRISONS & THE NORTHERN DISTRICT OF NEW YORK THROUGHOUT THESES PROCEEDINGS

The Gov't attempts to confine petitioner's and the "BOP's" arguments of litigation. The Gov't asserts that petitioner's argument was limited to "the 'BOP' erred in denying his request to designate the state prison nunc pro tunc as a place for him to serve his federal sentence." (See "Govt's Response" ¶ 2).

Releventy, petitioner did ask the "BOP" to designate his former state institution nunc pro tunc. Although the litigation was much more complex than than the Gov't reveals. The "BOP" and then the District Court ("NDNY") reasoned that the "records indicate the court was aware of your related charges and current sentence in the state of Connecticut prior to the imposition of your federal sentence through the Pre-Sentence Investigative Report." (See "Govt's Response" Ex. 1 (Response from the "BOP")). Arguing that if the Court wanted the prior sentence concurrent the Judge (Torres. E) would have reflected

intent instead of leaving a "silent judgment" which they reasoned is always consecutive.

The petioner contended that Congress has never authorized or allegated Constitutional or Congressional authority that would enable representitves from the "BOP" to define the term i.e. "silent judgment," when this term has never been promulgated or implimented in any Federal Codes of Regulation. Therefore, reasoning that the "Rule of Lenity" should apply in the case where a definition for "silent judgment" would have increased the penalty on petitioner when it could be based on no more than a guess.

As petitioner was filing institutional BP 11, he received a letter from the Honorable Ernest Torres dated June 9, 2003. Where he explained "I did not and could not have intended to make Mr. Voelker's sentence concurrent with the state sentence referred to in your letter because, at the time I imposed sentence, there was no outstanding state sentence." This ommission from the petitioner's sentencing Judge fragmented the "BOP's" and later the Court's (NDNY) entire argument as they consistantly reasoned that the sentencing Court was aware of the prior state sentence and the Judge would have infered intent if he wanted the sentence's to run concurrently. (See attached Letter from Hon. E. Torres (June 9, 2003)).

After some time of conventional prosecutorial evasions. The Honorable Frederick J. Scullin, Jr. (Chief Judge, NDNY) transfered this matter to this Honorable Court pursuant to 28 USC § 1631 for the aformentioned reasons.

Therefore the Govt's attempt to influence the Court's decision in this instant matter based on the "BOP's" statement within the "Govt's Exhibit". "The langauge employed by the BOP suggests that they considered, not only the sentencing order but, ... the application of federal statutes, your past

criminal history and the decision afforded to the Bereau of Prisons." (See "Govt's Response" ¶ 5). Relevently, the entire judgment was based on the misconception that the sentencing judge was aware that the petitioner was subject to an undischarged term of imprisonment. Which is thoroughly documented in the same Exhibit that the Gov't presents in opposition under the false pretense that all things were already considered by the "BOP." (See "Govt's Response" Ex. 1 ¶ 3).

(b) BOTH THE PETITIONER'S ATTORNEY AND THE COURT ARE EQUALLY CULPABLE IN THE OVERSIGHT LEADING TO THIS INSTANT MATTER

In an attempt to influence the Court's opinion within its assessment. The Gov't continually alludes that it was solely petitioner's lawyers (Carmine J. Giuliano, Esq.) oversight of neglecting to raise the issue in Court. In some how indirectly facilitating an ineffective claim or an attempt in justifying an attempt to relinquish blame from the Court's equally detrimental oversight.

The petitioner agrees that his counsel's entire performance was cumbersome at best. Although contrary to the Govt's assertions the Court was equally, if not more culpable than any body for this oversight. In that the relevent and corrasponding Section § 5G1.3(c) of the United States Sentencing Guidelines ("USSG"). Is a "Policy Statement" that is binding on the Court to follow. See Williams v. United States, 193, 199, 112 S.Ct. 1112, 1119, 117 L.Ed 2d 341 (1992), United States v. Reyes-Lugo, 238 F.3d 305, 309 (5th Cir. 2001)(non-conflicting policy statements are binding on the Court).

In fact Section § 5G1.3(c), "USSG", describes three very different subsections applicable to different situations. Which subsection (c) is applicable to petitioner. See United States v. Maria, 186 F.3d 65 (2nd Cir. 1999).

In a case in which a defendant is subject to an undischarged term of imprisonment. The Court generally has the authority to impose an imprisonment sentence on the current offense to run concurrently with or consecutively to the prior undischarged term . See 18 USC § 3553(a). Exercise of that method, however, is predicated on the Court's consideration of the factors listed in 18 USC § 3553(a), which apply to all federal sentences, including any applicable guidelines or policy statements issued by the Sentencing Commission.

Succinctly, the applicable subsection (c) of 5G1.3 was amended on November 1, 1995, to delete the requirement that the Court run a sentence consecutively to the extent to achieve a reasonable "incremental" punishment for the instant offense. Now, subsection (c) simply says that the sentence may be imposed to achieve a "reasonable punishment" and Application Note 3 adds to "avoid unwarranted disparity." (Amendment 535, "USSG").

The Courts have held that the 1995 Amendment means that the sentencing Court is no longer required to consider the hypothetical combined sentencing range ("methodology") before imposing a concurrent or consecutive sentence. See United States v. Valesquez, 136 F.3d 921 (2nd Cir. 1998). Although subsection (c) remains a "Policy Statement" which must be followed by the Courts. Stinson v. United States, 508 US 36, 41-8, 113 S.Ct 1913, 1917-20, 123 L.Ed 2d 598 (1993); United States v. Diaz, 285 F.3d 92 (1st Cir. 2002); United States v. Brewer, 23 F.3d 1317, 1332 (8th Cir. 1994).

When the Court does not follow this binding Policy Statement the case is always remanded back to the sentencing Court to remedy the matter. Which mirrors in effect the more unconventional course that the instant application took to get back in front of this sentencing Court. See United States v. Brassell, 49 F.3d 274 (7th Cir. 1995); United States v. Hernandez, 64 F.3d 179 (5th Cir.

1995); United States v. Wiley-Dunaway, 40 F.3d 67 (4th Cir. 1994)(Reversed and remanded when the sentencing court failed to follow the mandatory policy statement of § 5G1.3(c), "USSG.").

Somebody within the Administrative Process failed to inform the Court that the "PSR" stated that petitioner was subjetc to an undischarged term of imprisonment. With words used within their proper meaning the sentencing judge clearly states that "there was no outstanding state sentence", when it has been unambiguously confirmed that there was. Therefore, the Judge's ommission makes it absolutely impossible for the Court to adhere to the controlling "Policy Statement." As in United States v. Saintville, 218 F.3d 246 (3rd Cir. 2000). The petitioner was not afforded the opportunity for a concurrent sentence due to the fact that the Court was not aware of the germaine information it needed "to achieve a reasonable punishment", and make a determination on that basis. Whereas it has long been held that "official inadvertance" falls in favor of the defendant. United States v. Wenger, 457 F.2d 1082 (2nd Cir. 1972).

Considering that the District Court was not a party to the sentencing proceedings that could ignore mandatory "policy statements." The Courts just as, or perhaps, more culpable than petitioners former attorney's misteps judging by Court precedents. Therefore, diverting attention from the numerous statements that the Gov't makes similar to: However, "the record is silent because Voelker's counsel simply forgot." ("Govt's Response" ¶ 6).

(c) THE GOVERNMENT RELIES ON IRRELEVANT CASE LAW

The Gov't cites United States v. Winter, 730 F.2d 825, 826 (1st Cir. 1984) in support of their contention that the Court should not grant the petitioner a concurrent sentence. Winters affirmed the dismissal of a petition because § 3568

does not provide federal "credit for time spent in state prison on an unrelated charge" unless confinement was exclusive product of federal law enforcement officials.

However, the Gov't fails to take into account that this decision was premised entirely on the provisions of 18 USC § 3568, which was substantially modified in 1984 when Congress enacted 18 USC § 3585. In United States v. Wilson, 503 US 329, 112 S.Ct. 1351, 117 L.Ed 2d 593 (1992), the United States Supreme Court noted that in 1984 Congress had amended the predecessor statute 18 USC § 3568, in enacting § 3585(b) Congress enlarged the class of defendants eligible to receive credit. Under the old law, a defendant could receive credit only for tme spent in custody in connection with "the offense ... for which sentence was imposed." Under the new law, a defendant may receive credit both for this time and for time spent in official detention in connection with "any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed." Id. at 337, 112 S.Ct. 1351.

The amended statute, which became effective in 1987, renders the Winters case inapplicable here for two reasons . First, § 3585(b)(2) provides that credit may be awarded for detention in connection with any charge, not just "custody in connection with the offense or acts for which sentence was imposed." Second, the language defining "offense" as being an offense "in violation of an Act of Congress" has been removed, and replaced by the language which allows credit for "any time spent in official detention ... as a result of any other charge.." It appears , therefore, that federal involvement is no longer a triggering requirement of § 3585(b)(2). Accordingly, the Gov't has not otherwise cited a single judicial decision that requires federal involvement in order for a defendant to be eligible for sentence credit under the terms of § 3585(b)(2).

Therefore, rendering the Govt's contention in influencing the Court by citing Winter, 730 F.2d 825, as irrelevent by having no application in the instant matter. See Hughes v. Slade, 347 F. Supp. 2d 821, 828-29 (C.D. Cal. 2004)(Rejecting a Governmental argument citing and using the reasoning of Winter).

Additionally, the Gov't cites Barden v. Keohane, 921 F.2d 476 (3rd Cir. 1990) which is inopposite as to the circumstances in front of the Court at this time. (See "Govt's Response" ¶ 3). In Barden, the federal sentence was imposed before the state sentence alleviating any need for the Court in the current circumstances to adhere to § 5G1.3(c), "USSG." Releventy, the state judge ordered for its sentence to be run concurrently to the already imposed federal sentence. It has been well established that a "state courts intent is not binding on federal authorities." McCarthy v. Doe, 146 F.3d 118, 121 (2nd Cir. 1998). Wherein, the Third Circuit thoroughly articulated that point within Barden. Id. at 478 f.n. 4, at 482 f.n. 11(4).

Releventy, the question pertaining to Barden was that the "BOP" did not realize that it had the authority to designate a state facility nunc pro tunc. (which will hold importain if the "USDC" infers concurrency). In that notion and more on point with the instant proceedings is United States v. Maria, 186 F.3d 65 (2nd Cir. 1999). Wherein the Second Circuit remanded because the sentencing judge did not realize that he could render a concurrent sentence in this situation. As was the case with the Honorable Torres in his June 9, 2003 letter to petitioner where he stated. "Indeed, I believe that the First Circuit has indicated that even if the state sentence had been imposed first, the federal sentence must be consecutive." (See Letter by Hon. E. Torres (June 9, 2003)).

The circumstances pertaining to this "Traverse & Response" has held petitioner in a quandery. Significantly, this matter is now in front of the Court in attaining petitioner's expectations. Now, this matter is solely within this Honorable Court's discretion. Despite petitioners immense veneration for the Gov't (Gerard B. Sullivan, AUSA), and the Court (Ernest Torres, CUSDCJ) through out our vast six years of history that there's no need to capitulate at this time. The petitioner was compelled to respond to the "Govt's Response" in defense of this long and drawn out litigation. Since the obvious undertone of the Govt's argument was advocating against a concurrent sentence, based on legal views that have no relevence on the application of the current circumstance. In not conceeding to the Govt's improper legal theories, but providing an articulated analysis based on Court precedents. The petitioner prays that he has not prejudiced the Court's decision in any way. Only, preserving his litigation from any predisposition as the discretion is within the Court's hands.

## IV. PRAYER AND REMEDY REQUESTED

The petitioner humbly asks the Court to rule in favor of his federal sentence to run concurrent to his former state sentence. In so doing, amending petitioner's Judgment to reflect intent, or in the alternative granting a downward departure pursuant to § 5K.2, USSG. In resulting in petioner receiving credit for 1 year, 7 months, and 21 days time that he served in both federal holding and later state custody following indictment and sentencing.

As now the matter is before this Honorable Court I would respectfully request that the Court take into consideration the totality of petitioners current circumstances. Relevently, a multitude of things have have changed significantly since I stood before you. Above all else I am 6 years into my

recovery from my drug addiction that prevented me from living a productive life. Additionally, I have found my "calling" in being able to help other people with similar experiances utilizing my reality when I am released.
I have attained 252 hours of Chemical Dependency training within an extensive program offered by St. Josephs Rehabilitation Center, Inc. This has helped me with my own recovery while providing the capabilities to be a certified Substance Abuse Counselor and additional college credits. Which I have accumulated through the Newport Business Institute and corraspondance courses. (See attached St. Josephs Certificates of Completion Credits).

Significantly, as I am far from perfect I have received only one disciplinary report since being subject to the "BOP." This was a minor infraction for smoking in an [un]authorized area. (See attached Chronological Disciplanary Report). As I try to consume my time productively staying away from the negativity that runs through a prison environment.

Almost two years may not soud like much, but it's the difference of being 39 or 41 when I am released. Considering that I have been incarcerated since I have been 25 that is significant. I have been blessed to have supportive people around me. My mother who was just graduating UCONN School of Law at my sentencing is now a lawyer who comes to see once a month driving 5 hours. My stepfather is a district attorney in New London, CT (Lonnie Braxton, Esq.). As well as my fiance who was a sophmore in college at my sentencing has just started her second semester at the University of Maryland School of Law. After being a 3rd grade school teacher for 2 years after her B.A. (Ayana Mayberry, "PSR"). Ironically, every body around me is a lawyer and has been so supportive of me within my situation. My point is your Honor, this is not my world, and I have not been raised like this. Without drugs in my life I can be a productive

citizen around positive people.

If I can respectfully suggest that if you feal that I am deserving of the sentence of 188 months that you gave me in 2000. When you were not aware that I was subject to a prior sentence, and not the equavilant to the 215 month sentence that I am currently serving. In the notion of the compassion that you have shown to defendants serving sentences subject to crack cocaine. As one of those sentences thank you for any relief that you bless me with within your legal authority. Thank you for your time.

Respectfully,
Alonzo Voelker
Alonzo Voelker

* This "Traverse & Response" has been mailed in accordance of the "mail box rule" of Houston v. Lack, 487 US 266 (1988).

**CERTIFICATE OF SERVICE**

I, Alonzo Voelker, as petitioner herein, do hereby attest and affirm that all the facts and statements as made herein are true, correct, certain, and complete and are not meant to mislead, further they are made knowing the penalty for bearing false witness.

On this 25th day of January A.D. 2006, a true and correct copy of the enclosed was mailed via certified mail, pre-paid postage and addressed to the following address's.

**UNITED STATES DISTRICT COURT**
c/o Clerk of Court
2 Exchange Terrace
Providence, RI 02903

&

U.S. Attorney's Office
c/o Gerard B. Sullivan, AUSA
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Respectfully,
Alonzo Voelker
Alonzo Voelker
#04836-070
FCI Ray Brook
P.O. Box 9005
Ray BRook, NY 12977